United States District Court
for the
Southern District of Florida

| | |
|---|---|
| HMD America, Inc., f/u/b/o Certain Far East Underwriters with Fubon Insurance Co., Ltd., its lead underwriter, Plaintiffs, <br><br> v. <br><br> Q1, LLC, and Aldon Mega, Inc., Defendants. | Civil Action No. 23-21865-Civ-Scola |

## Order Granting Motion to Dismiss

Plaintiff HMD America, Inc., on behalf of its insurer, Certain Far East Underwriters, seeks to recover from Defendants Q1, LLC and Aldon Mega, Inc. over $3 million in losses it incurred by way of a stolen cargo shipment of 16,000 cellphones belonging to HMD. (Am. Compl., ECF No. 34.) HMD lodges three counts in its complaint: breach of contract and negligence against Q1 (counts one and three, respectively) and breach of contract and/or duties under the Carmack Amendment against Aldon Mega (count two). (*Id.*) In response, Q1 has filed a motion to dismiss (Def.'s Mot. to Dismiss, ECF No. 39), submitting (1) HMD's claims against Q1 are preempted under federal law and (2) HMD fails to state a claim for either breach of contract or negligence against Q1. (Pl.'s Resp., ECF No. 46.)[1] HMD has responded to the motion (Pl.'s Resp., ECF No. 46), Q1 has replied (Def.'s Reply, ECF No. 50), and the motion is now ripe for review. Having considered the parties' briefing, the record, and the relevant legal authorities, the Court, for the following reasons, **grants** Q1's motion to dismiss the claims against it (**ECF No. 34**).

1. **Background**[2]

It appears HMD regularly stored a stock of its merchandise at Q1's distribution warehouse in Orlando, Florida. (Am. Compl. ¶ 4.) In conjunction with that storage, HMD and Q1 also agreed, through a written contract executed in August 2021, that Q1 would perform various logistic-related services for HMD

---

[1] Aldon Mega has answered the complaint (ECF No. 36) and so count two is not at issue with respect to this order.

[2] The Court accepts the complaint's factual allegations, as set forth below, as true for the purposes of evaluating the motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

based on certain terms and conditions. (*Id.* ¶ 15; Agmt., ECF No. 45-3, 2.) In March 2022, HMD asked Q1 to "arrange and transport" a shipment of twenty pallets of HMD's Nokia cellphones (amounting to 16,000 cellphones) from Q1's Orlando warehouse to a consignee in Jeffersonville, Indiana. (Am. Compl. ¶¶ 2, 4, 6.) Q1 then, in turn, subcontracted the transportation of the cellphones with its truck broker (and non-party), World Wide Express Corp. (*Id.* ¶¶ 7, 28.) Thereafter, World Wide contracted with Aldon Mega (now also a third-party plaintiff) to transport the twenty pallets of cellphones. (*Id.* ¶¶ 8, 28.) Aldon Mega then subcontracted the actual transportation of the shipment to RPM Corp. (now a third-party defendant and counter claimant). (*Id.* ¶ 29.) Although the shipment was picked up from Q1's warehouse, on March 11, 2022, apparently by RPM, it was stolen before it reached its destination in Indiana. (*Id.* ¶¶ 10, 11.) HMD says it was damaged in excess of $3,392,000 based on the loss. (*Id.* ¶ 12.)

As set forth in the agreement between HMD and Q1, Q1 was obligated "perform all Services with highest degree of care, diligence, skill and judgement." (*Id.* ¶ 16; Agmt., Appx. 1, ¶ 7.) The agreement also provides that Q1 was "responsible for the coordination of all HMD shipments from any origin to any destination" and required to "arrange the shipment to the final destination with the best possible carrier." (Am. Compl. ¶ 17; Agmt., Appx 2, ¶ 5.)

As to count one, the breach-of-contract claim, HMD contends that, based on the theft, Q1 breached the parties' agreement "by failing to deliver the shipment in accordance with their contract, by failing to adequately arrange for the proper delivery of the shipment, by failing to arrange the shipment with the best possible carrier, and by failing to appoint a well-qualified carrier that had adequate insurance coverage for transporting cell phones." (Am. Compl. ¶ 18.) HMD also maintains that, "because Q1 was managing the outbound transportation of the shipment, Q1 was responsible for and had the risk of loss of the subject cargo from the moment the goods are received by Q1 into its warehouse until the goods were delivered to the consignee." (*Id.* ¶ 16.)

As to count three, the negligence claim, HMD complains that "Q1 failed to use reasonable care in transporting the subject shipment and/or failing to appoint the best possible carrier for the subject shipment," and, as a result, "the subject shipment was stolen, and there was no insurance coverage for the carrier to pay for the loss." (*Id.* ¶ 30.)

**2. Legal Standard**

A court considering a motion to dismiss, filed under Rule 12(b)(6), must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement

of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqubal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 3. Analysis

#### A. HMD's negligence claim against Q1 is preempted.

Q1 argues that both HMD's negligence and breach-of-contract claims against it are preempted under the Federal Aviation Administration Authorization Act. (Def.'s Mot. at 8–9.) In response, HMD submits its claims are not preempted because (1) the FAAAA only applies to intrastate, and not interstate transportation; and (2) the FAAAA does not apply to Q1 because Q1, as the shipper, was not a licensed broker and was not a broker for HMD's shipment. (Pl.'s Resp. at 4–5.) While the Court is persuaded that preemption applies to HMD's negligence claim, it finds Q1's argument as to HMD's breach-of-contract claim lacking.

As a starting point, Q1 has failed to cite any legal authority, and the Court itself is aware of none, supporting its position that HMD's breach-of-contract claim is preempted. Indeed, as HMD points out, case law supports the contrary: "Between the narrow reach of the statute and Congress's intent to only reach state regulation, it is clear that private contractual disputes are not completely preempted by the FAAAA." *Indep. Serv. Provider, LLC v. Aponte*, 6:21-CV-558-GAP-GJK, 2021 WL 2828323, at *2 (M.D. Fla. May 24, 2021) (noting that "the Supreme Court has already held that the ADA's preemption clause—which has broader scope than the FAAAA's—*does not* preempt breach of contract claims") (emphasis in original) (citing *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228–29 (1995)); *Porter Capital Corp. v. Johns Manville, Inc.*, 2:12-CV-00925-RDP, 2013 WL 3153519, at *5 n. 3 (N.D. Ala. June 14, 2013) (finding common law breach of contract claim not preempted under the FAAAA); *Barber Auto Sales, Inc. v. United Parcel Services, Inc.*, 494 F. Supp. 2d 1290, 1293 (N.D. Ala. 2007) (implicitly acknowledging that "routine breach of contract claims are not preempted by the FAAAA") (cleaned up); *Custom Stud, Inc. v. Meadow Lark Agency, Inc.*, 566 F. Supp. 3d 950, 954–55 (D. Minn. 2021) ("[T]he FAAAA does not preempt suits alleging breach of a party's own self-imposed undertakings

because these do not constitute a violation of state-imposed obligations.") (cleaned up). Without further support or analysis then, from Q1, the Court declines to find HMD's breach-of-contract claim in this case preempted.

Next, in evaluating Q1's preemption argument with respect to HMD's negligence claim, the Court begins with the overarching principle that "state law that conflicts with federal law is without effect." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (cleaned up). This preemption can operate, generally, when either (1) Congress explicitly states an intent to preempt state law; (2) a state law "actually conflicts with federal law"; or (3) a "federal law so thoroughly occupies a legislative field" that one can reasonably infer "that Congress left no room for the States to supplement it." *Id.* Regardless of how preemption applies in a given case, any preemption assessment "starts with the assumption that the historic police powers of the States are not to be superseded by Federal Act unless that is the clear and manifest purpose of Congress." *Id.* With that backdrop in mind, the Court turns to the FAAAA itself.

The FAAAA's express preemption provision provides, in relevant part, that a state "may not enact or enforce a law . . . related to a price, route, or service of any . . . broker . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Under the FAAAA, "transportation" is defined to include "services related to" "the movement of . . . property." 49 U.S.C. § 13102(23). And "broker" is defined to mean one who "sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). "The phrase 'related to' . . . embraces state laws having a connection with or reference to carrier rates, routes, or services, whether directly or indirectly." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (cleaned up). Despite the breadth of the phrase, however, the Supreme Court has nonetheless cautioned that "that § 14501(c)(1) does not preempt state laws affecting carrier prices, routes, and services in only a tenuous, remote, or peripheral manner." *Id.* at 261 (cleaned up).

In rejecting Q1's preemption arguments, HMD argues that the FAAAA simply doesn't apply to its claims. First, HMD says, the FAAAA, based on its title—"Federal authority over *intrastate* transportation"—doesn't apply here because the goods were to be transported *interstate*, from Florida to Indiana. (Pl.'s Resp. at 4 (emphasis added) (quoting 49 U.S.C. § 14051's title).) HMD's position, however, is contrary to the very reason the FAAAA was enacted: Congress's concern "that state regulation impeded the free flow of trade, traffic, and transportation of *interstate* commerce." *Dan's City*, 569 U.S. at 263 (cleaned up) (emphasis added). Indeed, as Q1 points out, the FAAAA has been broadly and repeatedly applied to preempt state-law claims related to interstate

transportation of property. *See, e.g., Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1268 (11th Cir. 2023) (affirming dismissal of state tort claims based on "allegations of negligence and gross negligence against a transportation broker for its selection of a motor carrier to transport property in interstate commerce," from Colorado to Maryland); *Luccio v. UPS, Co.*, 9:16-CV-81703-RLR, 2017 WL 412126, at *2 (S.D. Fla. Jan. 31, 2017) (Rosenberg, J.) ("[C]ase law and statutory interpretation support the conclusion that the FAAAA was intended to apply to intrastate as well as interstate shipping unless otherwise exempted.").

Second, HMD argues that the FAAAA doesn't apply to Q1 because Q1 is a shipper and not a licensed broker or broker for the cellphone shipment in this case. (Pl.'s Resp. at 4–5.) The Court is not persuaded. Instead, the Court agrees with Q1 that FAAAA preemption applies to HMD's tort claim against Q1 because that claim relates to Q1's alleged negligence in arranging for the transportation of cargo and Q1's alleged negligent selection of a motor carrier. In short, the Court finds HMD's claim against Q1 is an attempt, whether directly or indirectly, to regulate broker and carrier services. *See, e.g., Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 372 (2008) (preempting state law that requires a shipper to choose a certain kind of delivery service because although the state regulation "tells *shippers* what to choose rather than *carriers* what to do," the effect of the regulation is to regulate carrier delivery services); *Lee v. Werner Enterprises, Inc.*, 3:22 CV 91, 2022 WL 16695207, at *4 (N.D. Ohio Nov. 3, 2022) ("[N]egligence claims brought against a shipper and broker fall squarely within the preemption of the FAAAA."); *Creagan v. Wal-Mart Transp., LLC*, 354 F. Supp. 3d 808, 813 n. 6 (N.D. Ohio 2018) (finding a negligent hiring claim against a defendant shipper preempted because "the negligent hiring claim against [the shipper] stem[med] entirely from [the defendant] broker['s] services"). Accordingly, the Court finds HMD's negligence claim against Q1, based on Q1's alleged failure "to use reasonable care in transporting the subject shipment and/or by failing to appoint the best possible carrier for the subject shipment," preempted by the FAAAA.

### B. HMD fails to state a breach-of-contract claim against Q1.

With the Court's finding that HMD's negligence claim is preempted, remaining for resolution is only whether HMD has stated a plausible claim for breach of contract. Q1 does not dispute the existence of an agreement, but maintains that HMD's allegations of breach are far too conclusory and vague to support a claim for breach of contract. (Def.'s Mot. at 9–11.) In response, HMD stands on its pleading, insisting, without elaboration, that it "sufficiently alleges the existence of a valid contract[,] several of the material provisions of the contract, that Q1 breached the material terms of that contract, and that [it]

suffered damages as a result." (Pl.'s Resp. at 5.) After careful review, the Court agrees with Q1: the complaint fails to sufficiently articulate enough facts to state a plausible claim for breach of contract.

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). Because the parties do not dispute the first element, the Court's analysis is trained on whether HMD has sufficiently alleged a material breach that resulted in HMD's damages.

Within its breach-of-contract count, HMD specifically identifies two provisions of its contract with Q1: paragraph seven (labeled "Liability") from appendix one; and paragraph five (labeled "Transport Concept") of appendix two.[3] (Am. Compl. ¶¶ 16, 17.) In its complaint, HMD describes paragraph seven as obligating Q1 "to perform all of its services with the highest degree of care, diligence, skill and judgment." (Am. Compl. ¶ 16.) And it describes paragraph five as rendering Q1 "responsible for the coordination of all HMD shipments from any origin to any destination" and for the arrangement of "the shipment to the final destination with the best possible carrier." (*Id.* ¶ 17.) Additionally, without referencing a particular provision of the contract, HMD also alleges, in its complaint, that "because Q1 was managing the outbound transportation of the shipment, Q1 was responsible for and had the risk of loss of the subject cargo from the moment the goods are received by Q1 into its warehouse until the goods were delivered to the consignee." (*Id.* ¶ 16.) HMD then presents the entirety of its breach allegations in one short paragraph, alleging that Q1 failed to (1) "deliver the shipment in accordance with [the] contract"; (2) "adequately arrange for the proper delivery of the shipment"; (3) "arrange the shipment with the best possible carrier"; and (4) "appoint a well-qualified carrier that had adequate insurance coverage for transporting cell phones." (*Id.* ¶ 18.)

The Court agrees with Q1 that these allegations are inadequate. The specific breach allegations, confined to paragraph eighteen of HMD's complaint, are purely conclusory and devoid of any concrete facts. HMD's position seems to be that, simply because the cargo was stolen, Q1 must have somehow failed to uphold its end of the bargain. But, HMD fails to actually connect these dots—the theft and the contract—and ultimately its allegations leave the Court with more questions than answers: Which provision of the contract did Q1 breach when the

---

[3] Although the amended complaint references the agreement as being attached as an exhibit to the complaint, HMD acknowledges having inadvertently neglected to file it. Both parties appear to agree, however, that the Court can consider the contract—central to HMD's claim and undisputed (later filed by both HMD (Agmt., ECF No. 45-3) and Q1 (Agmt., ECF No. 39, 14–21))—without converting Q1's motion to dismiss into one for summary judgment.

cell phones were not delivered because they were stolen from the motor carrier? What was inadequate about the way Q1 coordinated the shipment? What facts support HMD's claim that Q1 failed to arrange the shipment with the "best possible carrier"? Is it HMD's position that the best possible carrier would be wholly impervious to all thefts? What facts show that the carrier Q1 appointed was not "well-qualified"? Which contract provision required Q1 to appoint a carrier that had adequate insurance coverage for transporting cell phones?

Notably, HMD has not presented any factual allegations supporting its claim that Q1 breached either of the provisions it specifically references. As to the liability provision (paragraph seven of appendix one), HMD proffers no facts showing that Q1 failed to perform its duties "with [the] highest degree of care, diligence, skill and judgment," as required by the contract. (Agmt., Appx. 1, ¶ 7.) Similarly, the complaint fails to set forth any facts that would support a claim that Q1 breached the transport provision (paragraph five of appendix two) as well. As applicable here, the transport provision renders Q1 "responsible for the coordination of all HMD shipments" and requires Q1 to "arrange the shipment to the final destination with the best possible carrier and routing within agreed lead[ ]time." (*Id.* Appx. 2, ¶ 5.) But none of HMD's allegations supply any facts showing that the theft of the cargo from the carrier resulted from Q1's failure to comply with these duties under the contract.

Further undermining the viability of HMD's breach-of-contract claim, as Q1 points out, HMD's allegations also mischaracterize the parties' agreement. HMD's position appears to be that the contract provides for absolute liability against Q1 for cargo that failed to reach its destination in Indiana after leaving Q1's warehouse in Florida—regardless of whether Q1 was at fault. That is, according to HMD's reading of the agreement, even without any showing that the in-transit loss was within Q1's control, Q1, despite not being the actual carrier of the goods, nonetheless bore all the risk of that loss, whatever the cause. HMD fails, however, as Q1 points out, to reference any actual contract language that warrants HMD's interpretation. Accordingly, the Court finds HMD's unsupported speculation, that "Q1 was responsible for and had the risk of loss of the subject cargo from the moment the goods are received by Q1 into its warehouse until the goods were delivered to the consignee," unavailing. (*Id.* ¶ 16.)

Indeed, other provisions in the contract appear to indicate the contrary: that Q1 was in fact *not* absolutely liable for any such loss during transport by the carrier. For example, the contract explicitly holds each party "fully liable" to the other for damages arising out of any "gross negligence or willful act or omission." (Agmt., Appx. 1, ¶ 7.) The agreement further specifies that Q1 is "responsible for" and bears "the risk of the Goods from the moment the Goods are taken in charge of [Q1] until such Goods are released to HMD's carrier if

HMD is managing the outbound transportation"; and, if Q1 "is managing the outbound transportation, the outbound goods will be insured under HMD Global's insurance freight carrier." (*Id.*) These provisions would not make sense if the parties' agreement was that Q1 was to remain fully liable for any loss of the shipment, regardless of Q1's fault or ability to prevent the loss. The same logic applies to the agreement's force majeure clause, absolving Q1 for any liability for "events beyond the control of the Party which occur after entering into agreement for Services and which were not reasonably foreseeable at that time and whose effects are not capable of being overcome without unreasonable expense and/or loss of time." (Amgt., Appx. 1, ¶ 15.) HMD's contention that, under the contract, Q1 had the full "risk of loss of the subject cargo" until it was delivered to the consignee (Am. Compl. ¶ 16) is irreconcilable with this force majeure provision. This is especially so where the complaint is devoid of facts from which the Court could conclude or even infer that the theft of the cargo was the result of Q1's own actions or inactions.

      Lastly, HMD's efforts to insert new allegations, in opposition to Q1's motion to dismiss are also unavailing. In its response, HMD points to a contract provision that renders Q1 "fully responsible and liable for the actions of its subcontractors." (Pl.'s Resp. at 5–6 (referencing Agmt., Appx. 1, ¶ 3).) HMD then argues that World Wide's failure "to appoint the best possible carrier that had sufficient insurance to cover the loss is directly attributable to Q1." (Pl.'s Resp. at 6.) HMD's position here suffers from several defects. First, HMD did not set forth this basis for Q1's liability in its complaint and therefore it is not properly raised. *Huls v. Llabona*, 437 F. App'x 830, 832 n. 5 (11th Cir. 2011) (noting that a plaintiff may not amend his complaint through argument raised in a response to a motion to dismiss). Second, even if HMD had included these allegations in its complaint, they would be unavailing: HMD supplies no facts showing that World Wide failed to appoint the best possible carrier, that the appointed carrier was required to have insurance sufficient to cover the theft of the cargo, or that World Wide's actions or inactions otherwise resulted in the theft.

      In sum, the Court finds HMD (1) has not supplied factual allegations in its complaint, as opposed to bare conclusions, showing that Q1 breached any of the contractual provisions HMD explicitly identifies; (2) fails to identify any other contractual provisions that Q1 breached; and (3) improperly proffers allegations in response to Q1's motion to dismiss that were not included in HMD's complaint. Accordingly, the Court agrees with Q1 that HMD's breach-of-contract claim should be dismissed. *See, e.g., Stepakoff v. IberiaBank Corp.*, 637 F. Supp. 3d 1309, 1313 (S.D. Fla. 2022) (Bloom, J.) ("In order to allege a material breach in accordance with the pleading standards required under the Federal Rules of Civil Procedure, the plaintiff must allege which provision of the contract has

been breached."); *Siedle v. Nat'l Ass'n of Sec. Dealers, Inc.,* 248 F. Supp. 2d 1140, 1143 (M.D. Fla.2002) ("Contract construction is a matter of law, and dismissal is appropriate where the cited language in the contract unambiguously demonstrates that the Plaintiff is not entitled to the relief sought.").

### 4. Conclusion

For the reasons set forth above, the Court **grants** Q1's motion (**ECF No. 39**) and **dismisses** HMD's claims against Q1 **with prejudice**: HMD's state-law negligence claim is barred by § 14501(c)(1) and HMD fails to state a claim for breach of contract.

Additionally, the Court dismisses HMD's claims against Q1 **without leave to amend**, denying its cursory request to amend, inserted as an afterthought, at the end of its response to Q1's motion to dismiss. (Pl.'s Resp. at 6.) The request is both procedurally defective and lacking in substantive support. First, the request is untimely and HMD fails to supply good cause, or even any cause, that would warrant an extension of the deadline to amend the pleadings. And second, the request is improperly presented, introduced perfunctorily and thoroughly devoid of any legal support. *See Newton v. Duke Energy Florida, LLC,* 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."); *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.") (noting also that "a motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment") (cleaned up). Finally, HMD has already amended its complaint once, in response to Q1's first motion dismiss, and yet still failed to set forth a viable claim against Q1.

**Done and ordered** in Miami, Florida, on January 12, 2024.

Robert N. Scola, Jr.
United States District Judge